**GREEN EVANS-SCHROEDER, PLLC**
Matthew H. Green (Bar No. 020827)
Peter Hormel (Bar No. 015808)
130 West Cushing Street
Tel.: (520) 882-8852
Fax: (520) 882-8843
Email: matt@arizonaimmigration.net
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR25-02525-RCC-MSA-1 |
| Plaintiff, | |
| vs. | **REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT** |
| Hernan Rafael Castro, | |
| Defendant. | |
| | (Honorable Raner C. Collins) |

Defendant hereby replies in support of his Motion to Dismiss Indictment (Document 35), addressing the government's response thereto (Document 56). Pursuant to the order of the Court (Document 44), this Reply is due on October 27, 2025.

**I.     Introduction**

**A. Facts Not in Dispute**

Based on court filings made the parties in this case, the facts in this section are not disputed.

1

Mr. Castro has applied for Naturalization twice: once in 2014 and once in 2022. Both applications were denied.

In both instances, Mr. Castro gave sworn statements to USCIS in support of his applications. In the first case, the interview was not recorded, but the officer administering the interview, Robin Bayer, made a detailed record of it. *See* Document 35-7. In the second case, the Officer, Livia Lopez, did record the interview, which took place on May 17, 2023. This interview was, according to her, at least 45 minutes in length. *See* Document 35-4.

Officer Lopez' written record of this interview was appended to Mr. Castro's Motion to Dismiss. *See* Document 35-3. It is two pages in length and contains responses to 9 questions, 8 of which were either biographical or sought yes-or-no answers.

The actual recording was destroyed and is no longer available.

**B. Additional Facts**

Recent disclosure from the government has provided additional background regarding the interview process at USCIS.

USCIS developed a policy for the retention of tape-recorded naturalization interviews in the time period between Mr. Castro's first and second applications. *See* Attached Exhibit A, USCIS General Policies and Procedures (Adjudications). Pursuant to the general guidelines listed in this document, the local Tucson USCIS developed policies for the retention of such recordings in 2015. *See* Attached Exhibit B, ROI of interview of Julie Hashimoto.

Based on the materials, it is evident that Officer Lopez did not follow written guidelines and polices in that she:

- Either did not review Mr. Castro's A-file prior to conducting the interview ("did not recall having access to, or seeing/reviewing, CASTRO-Gonzalez' 2014, Form N-400, Application for Naturalization before conducting his 2022 interview." *See* Document 35-4), or failed to question Mr. Castro about its contents (including his 2014 N-400 application);

- Did not conduct the interview in conformity with the guidelines, i.e. appears to have relied primarily on yes/no questions;

- Did not document the interview properly, either by taking or retaining notes as required by the guidelines, or by drafting a complete sworn statement; and

- Did not preserve the recording of Mr. Castro's interview. *See* attached Exhibit B, ROI of interview of Julie Hashimoto.

**II.    Discussion**

**A. Materiality**

In its response, the government goes to some length to argue that 18 U.S.C. § 1015(d) does not require proof that a false certification given during an immigration process be material to the ultimate decision in that process. *See* Document 56, pp. 2-4, Section A, "Materiality Is Not an Element to Prove False Certification."

Assuming, *arguendo* and for the purposes of this motion only, that this is correct, the materiality of Mr. Castro's allegedly false statement has nothing to do with the analysis of the government's destruction of evidence.[1]

As Mr. Castro explains in his Motion to Dismiss Indictment, "it appears that the Seventh Circuit Court of Appeals is the only jurisdiction to have ever published a pattern jury instruction for" 18 U.S.C. § 1015(d). Doc. 35, p. 6. The language of subsection (d) "clearly requires the Government to prove that the defendant *knowingly* made a false certification and *knew* that the certification was required as charged in the indictment. In other words, there are two elements to the crime, each of which require the Government to prove a mens rea of knowingly." *Id.*; *see also* attached Exhibit C, Seventh Circuit Pattern Jury Instruction.[2] Therefore, evidence that sheds light on Mr. Castro's mental state at the time he completed and filed his naturalization application in 2022, and as it existed during his naturalization interview in 2023, is highly relevant to the question of his guilt. As such, the government now has the burden of proving the *mens rea* of "knowingly" at trial. Mr. Castro, of course, has the right to challenge the government's evidence on that element. The Ninth Circuit Jury Instructions define knowingly as follows:

---

[1] As will be explained immediately below, it is the defendant's mental state, not the mental state of the immigration services officer, that is *material* to the jury's decision as to whether Mr. Castro is guilty of a crime.

[2] This instruction requires that a defendant charged under this section must:
1. *Knowingly* make a false certificate, acknowledgment, or statement[2];
2. *Know* "the [certificate; acknowledgment; statement; oath; affirmation; signature; attestation was [required; authorized] as charged in the indictment."[2]

4

> An act is done knowingly if the defendant is aware of the act and does not [act] [fail to act] through ignorance, mistake, or accident. [The government is not required to prove that the defendant knew that [his] [her] acts or omissions were unlawful.] You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

*See* attached Exhibit D, Model Criminal Jury Instruction 4.8 (9th Circuit).

Even more significant, as Mr. Castro explains in his Motion to Dismiss Indictment, is the fact that he intends to raise the defense of reliance on advice of counsel. *See* Doc. 35, pp. 7-8. Additional evidence of Mr. Castro's good faith reliance on advice of counsel will likely be provided to this Court as proposed exhibits prior to the November 18, 2025, evidentiary hearing. It is also likely that even more evidence that bears on the issue will be uncovered and introduced at trial. As such, Mr. Castro expects that the District Court will provide the jury with the Ninth Circuit's pattern advice-of-counsel instruction[3].

However, even without the supplemental instruction, there is substantial evidence that Mr. Castro worked closely with his former immigration attorney, Margo Cowan, for nearly a decade and that she represented him in preparing and filing his 2022 naturalization application. This evidence is highly relevant to the jury's assessment of whether Mr. Castro signed the application "through ignorance, mistake, or accident" under the circumstances.

Per the government's Response, "[t]he defendant completed his crime once he submitted his application, so any statement taken after the submission of the application

---

[3] *See* https://www.ce9.uscourts.gov/jury-instructions/node/861.

5

is immaterial to the commission of the crime itself." Should the government's reasoning hold, then no other evidence regarding Mr. Castro's state of mind would be relevant or admissible. But such a position is wholly unsupportable. Returning to Model Criminal Jury Instruction 4.8, *supra*, the Ninth Circuit requires that the jury be instructed that it may "consider evidence of the defendant's words, acts, or omissions, along with all other evidence, in deciding whether the defendant acted knowingly."

Immigration law is complex[4], especially where Title 8 of the U.S. Code intersects with state post-conviction relief law. It is often difficult — even for lawyers — to understand how a vacated conviction impacts a non-citizen's immigration status, and whether post-conviction relief removes some, all, or none of the resulting immigration consequences.

In 2015, Mr. Castro spent five months incarcerated in the Eloy Detention Center. He was released only after several of his misdemeanor convictions were vacated, which resulted in the dismissal of his immigration court case. *See attached* Exhibit E, Government's Disclosure, Bates Nos. 341-348. By the time he returned home to Tucson that year, Mr. Castro undoubtedly understood, at the very least, that the post-conviction relief he had received was responsible for his liberation and restoring him to his lawful permanent resident status. And yet, as is explained below, Mr. Castro remained unsure as

---

[4]"Immigration law can be complex, and it is a legal specialty of its own." *Padilla v. Kentucky*, 559 U.S. 356, 269, 130 S. Ct. 1473, 1483, 176 L. Ed. 2d 284, 295-296 (2010).

to whether his legal victories in 2015 would clear all legal obstacles on his path to citizenship.

By the end of 2021, Mr. Castro contacted Ms. Cowan and her law firm to inquire about assistance with re-applying for naturalization. He would continue to communicate and cooperate with Ms. Cowan and her legal assistant, Xochitl Mercado, for over six months, as they prepared his second naturalization application. *See attached* Exhibit F, Redacted Client File Documents from Margo Cowan, Sep. 11, 2025. The evidence establishes that, during this time, Mr. Castro still harbored some concerns about whether his criminal history would cause him problems if he applied for naturalization again. But significantly, Ms. Cowan and her legal assistant assured him that he need not worry. *Id*.

For that reason, when Mr. Castro submitted his N-400 application in 2022, he reasonably believed — based on the legal advice he had received — that the post-conviction relief obtained seven years earlier had removed any remaining immigration consequences. That belief was reinforced when Ms. Cowan and her legal assistant, having addressed his concerns, presented him the final N-400 application, already signed and dated by Ms. Cowan, for him to sign and date as well. Mr. Castro indicates as much in his record of sworn statement dated May 17, 2023. *See* Doc. 35-3.

Although that record of sworn statement is precisely the kind of evidence that the jury ought to consider when deciding whether Mr. Castro acted knowingly, it is still not the best evidence.[5] The best evidence, of course, would be the video recording that Ms.

---

[5] It is also, in violation of USCIS guidelines, incomplete.

Lopez created that day during her interview of Mr. Castro. Unfortunately, we do not know whether, during that interview, Mr. Castro explained the basis for his written statement or clarified that his understanding came from Ms. Cowan's advice.

The destroyed video recording therefore would "be expected to play a significant role in the suspect's defense," as exculpatory and, at the very least, "potentially useful" evidence for the defense in this case. *California v. Trombetta*, 467 U.S. 479, 488 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

Under the circumstances, it is difficult to imagine a piece of evidence that is more *material* to the defendant's state of mind, and more relevant to the jury's determination of *mens rea*, than the video recording of Mr. Castro's May 17, 2023 naturalization interview.

### B. A Due Process Violation Has Occurred.

The law governing the destruction of evidence was comprehensively discussed in Mr. Castro's Motion. *See* Document 35. The government does not appear to take issue with the cases cited in that motion. Instead, it focuses on the issues described in section II.A above and, primarily on the allegation that the recordings were lost "through no fault of the agency." *See* Document 56, p. 4. However, "[i]t is a well-known maxim that agencies must comply with their own regulations." *Ramon-Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984) (citations omitted). In this case, USCIS repeatedly and substantively violated its own regulations, to the prejudice of Mr. Castro.

The government alleges that "[u]nfortunately, sometime after May 17, 2023, ISO Lopez's computer crashed two times and as a result the recording was lost." *See* Doc. 56,

p. 5. The government, however, has not provided any evidence that the crashes caused the loss of the data[6]—or if that was even the cause, *when* that occurred.

As a starting point, USCIS guidelines mandate that "[f]or the purposes of these procedures, offices[7] that audio-visually record immigration interviews will record, at a minimum, interviews conducted for all cases that they deem to be of concern, plus a certain small percentage of other interviews." *See* Exhibit A, pp. 30-32. The guidelines then provide detailed instructions for the retention of video recordings, which mandate that the recording be burned onto a DVD in order to save disc space on the officers' computer. Officer Lopez acknowledged in her interview that "usually in cases where there was a denial the interview would be burned to a disc and placed in the A-File." *See* Doc. 35-4, p. 4.

Since all the government's disclosure refers to efforts to locate the recording somewhere in the cloud or on the agency's servers and the A-file contains no disc, we must conclude that no disc was ever burned. As such, Officer Lopez failed to comply with the agency's basic data retention regulations, and the destruction of the recording is absolutely the agency's fault.

---

[6] The disclosed interview of ISO Lopez shows that her computer was re-imaged. If the recording had existed on Lopez' hard drive at the time of the crash, then a re-imaging should have recovered the files. *See* Doc. 35-4, page 4.

[7] As described above, the Tucson USCIS office adopted procedures for recording interviews in 2015.

Combined with the other failures to comply with regulations described in section I.B above, the processing of Mr. Castro's N-400 interview was conducted arbitrarily, without proper preparation, and without regard to preserving evidence the agency's guidelines explicitly recognize *should* be preserved. Given the brevity of the sworn statement (Doc. 35-3), which addresses almost nothing beyond basic biographical information, and given Officer Lopez' admission that the interview took at least 45 minutes, one can only conclude that significant portions of the interview have been lost.

Mr. Castro had a constitutionally protected interest in being able to apply for United States citizenship. *See*, e.g. *Brown v. Holder*, 763 F.3d 1141, 1147-1148 (9th Cir. 2014), citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). While an agency's failure to follow its own regulations does not necessarily give rise to a constitutional violation on its own, constitutional rights are implicated "when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights."" *Brown,* supra, at 1149, citing *Bates v. Sponberg*, 547 F.2d 325, 330 (6th Cir. 1976). As such, if USCIS "arbitrarily and intentionally obstructed his application, his right to due process has been violated." *Brown*, at 1150.

USCIS' guidelines recognize that recordings are made to protect the rights of the applicant in the case of a denial. The agency's serious failures to follow its own guidelines—with regard *both* to the interview process itself *and* the recording of same—during Mr. Castro's N-400 application process constitute a violation of his constitutional due process rights. *See,* e.g. *Constantinovici v. Bondi,* California Southern District Court, October 10, 2025, 2025 U.S. Dist. LEXIS 201394.

**CONCLUSION**

Because no other remedy is adequate, the Court should dismiss the Indictment. Alternatively, it should give a remedial adverse inference jury instruction. Alternatively, it should enter any other appropriate order to remedy the discovery violation.

RESPECTFULLY SUBMITTED this 27th day of October, 2025.

By: s/ *Peter Hormel*
Peter Hormel
Attorney for Defendant

Copy of the foregoing
via CM/ECF to:

Vincent J. Sottosanti, Esq.
Assistant United States Attorney

Jose R. Solis, Esq.
Assistant United States Attorney