# PART E – ADJUDICATIONS

**Chapter 8: Interviews**

**A. Purpose**

The interview (also known as an examination) of an applicant for an immigration benefit is a key function of the USCIS mission. In order to achieve consistency and quality in administering immigration benefits, officers must perform appropriate adjudicative steps before making a decision on a case, including the fundamental function of conducting an effective interview.

The purpose of the interview is to develop or confirm all information relevant to the adjudication for an immigration benefit.  USCIS may require an applicant or petitioner, sponsor, beneficiary, or other individual residing in the United States at the time of filing an application or petition to appear for an interview. See 8 CFR 103.2(b)(9).

**Note**: In this chapter, the term "applicant" is used generically to include applicants, petitioners, beneficiaries, requestors, and their witnesses.

Although interviews will vary widely depending on the application, the subject matter, and purpose of the interview, all standard interviews will encompass the steps outlined in this chapter. The procedures set forth below apply to all Field Operations Directorate adjudication officers (ISOs) interviewing applicants for immigration benefits. No officer should be assigned to conduct interviews until his or her first line supervisor is confident that the officer is fully competent to do so.

The primary purpose of the interview is to develop the facts the officer needs for a sound adjudication pursuant to immigration laws, regulations, policies and procedures, by:

- Verifying information in the record, including answers to questions on USCIS forms;

- Clarifying information;

- Developing/discovering new information – favorable or unfavorable – that may be relevant to adjudication, and;

- Determining the credibility of the person(s) being interviewed.

USCIS interviews are *non*-adversarial.

**B. Authority to Conduct Interviews**

INA 287(b) and 8 CFR 287.5(a)(2) - identify the powers of immigration officers

8 CFR 103.2(b)(9) - relates to USCIS's authority to require an appearance of the applicant, the beneficiary, the petitioner, in front of an officer of this Service regarding the submitted application for immigration benefits.

8 CFR 335.2(a) – identifies USCIS's authority to require an appearance of the naturalization applicant in front of an officer of this Service regarding the submitted application for immigration benefits. The officer must know the reason for conducting an interview.

8 CFR 316.14(a) - identifies USCIS's authority to interview an applicant to determine eligibility for naturalization.

**C. Pre-Processing Prior to the Interview**

During pre-processing, applications are received and receipted by the Lockbox or a service center.  They are then reviewed for initial sufficiency, cases warranting special handling are identified and separated, related A-files are requested, and background checks are initiated. For more information on pre-processing for particular applications, please refer to the procedures for that application in CHAP.

**D. Preparing for the Interview**

Reviewing the record before the interview is essential for the understanding of the relevant issues.  Without proper preparation, officers might fail to cover vital issues that would establish eligibility.  The failure to address relevant issues in the interview could result in either an otherwise unnecessary RFE or even an erroneous decision.  The length of the review depends on the amount and the nature of the material in the A-file.  Ideally, time for file review is built into the overall interview schedule.  Proper file review leads to more efficient and productive interviews.

Before starting the interview, officers must:

- Review the application/petition and contents of the A-file to ensure the officer understands the basis for the benefit being sought and identify items/inconsistencies requiring clarification. For instance, some items to review include (but are not limited to):

  o Is the form complete and signed?

  o Is the applicant represented by counsel with Form G-28 on file?

  o Are all necessary supporting documents present and translated into English with the proper certification, if necessary?

- o Does the beneficiary appear statutorily eligible for the benefit sought?

- o Do all supporting documents, whether original or good quality copies, appear to be authentic and unaltered?

- o Is there any reason to suspect fraud?

- o Are there any legal precedent decisions or court orders relevant to the case?

- o Are supporting documents present?

- o Are all relevant A and T files present?

**Note**:  Officers in a field office may evaluate the parts of the application that were previously reviewed, validated and adjudicated, but they should not re-adjudicate unless there is a substantive error.

- Verify that all required background checks are complete and valid.  See the National Background, Identity, and Security Check Operating Procedures (NaBISCOP).

**Note**:  Conduct additional TECS checks only if the Record of Inquiry TECS (ROIT) is expired, TECS checks are incorrect (such as a wrong date of birth), or incomplete (that is, names present in the file have not been run in TECS).  Follow the resolution process outlined in the NaBISCOP for Just In Time (JIT) checks as well as for TECS hits resulting from additional TECS checks.

- Review relevant laws, regulations, policies, and precedent decisions.

- Officers may consider other evidence from USCIS files or from other sources when adjudicating an application or petition. It is important to remember that before basing an adverse decision on such information the officer should provide the applicant or petitioner an opportunity to rebut the derogatory information during the interview. See 8 CFR 103.2(b)(16).

- Consult with their supervisor for the best course of action if the officer identifies complex issues or the need for coordination with local counsel or FDNS.

- Plan the tentative sequence of questioning.

**E. Disability Accommodations**

Individuals have the right to ask for disability accommodations before their interview date.  The applicant may call the USCIS Contact Center to ask that an accommodation be put in place. If

the applicant has not called ahead, the officer should consult their supervisor and follow local office policy on how to best serve the applicant.

For other common examples of accommodations that officers may provide to applicants with disabilities, see the Disability Accommodation Requests chapter of Vol 1, Part A.

**F. Use of Interpreters at Field Office Interviews**

1. Introduction

This section provides guidance to ensure the consistent use of interpreters during certain interviews conducted in a USCIS domestic field office in the absence of agency-provided interpretation.  Officers must determine whether a proposed interpreter meets the interpreter qualifications, including whether to grant exceptions for good cause when appropriate.

2. Purpose

This chapter applies to interviews conducted in a USCIS domestic field office.  It does not apply to interviews for the following:

- Naturalization (unless the interviewee qualifies for an exception – see the Exceptions to the Educational Requirements section in Vol 12, Part E)

- InfoPass appointments or other general customer service inquiries

- Interviews for which USCIS provides an interpreter

This chapter also does not apply to translators (translators translate written text; interpreters interpret verbal discussions).

In conjunction with 1/17/17 PM-602-0125.1, *The Role and Use of Interpreters in Domestic Field Office Interviews*, USCIS introduced Form G-1256, Declaration for Interpreted USCIS Interview and Form G-1256 Instructions.  The form reminds all parties that the interpreter must accurately, literally, and fully interpret for both the interviewee and the interviewing officer. The form also notifies the interviewee that an interpreter may hear confidential information shared between the interviewee and the interviewing officer.

This form must be signed by both the interviewee and the interpreter at the beginning of the interview in the presence of the interviewing officer.  If the interpreter is participating telephonically, the interviewing officer will annotate the form on the signature line indicating "Completed Telephonically" and place his or her initials next to the annotation.

For more specific information, refer to section "When the Interpreter is Participating Telephonically" in the "Instructions for Form G-1256" section. The officer must put both the interpreter and the interviewee under oath before the interview begins.

Authority

- 8 CFR 312.4

- 1/17/17 PM-602-0125.1, *The Role and Use of Interpreters in Domestic Field Office Interviews*

3. Core Qualifications to Serve as an Interpreter

In order to qualify as an interpreter for purposes of an immigration interview conducted in a USCIS domestic field office, an individual must:

- Have demonstrated proficiency in both English and in the interviewee's language;

- Be able to interpret competently between English and the interviewee's language; and

- Be able to interpret with impartiality and without bias.

If the officer determines either before or during the interview that the interpreter chosen by the interviewee cannot meet these standards, the officer must disqualify the interpreter.

*Restrictions*

In general, individuals who may not serve as an interpreter during a USCIS domestic interview include:

- Minors under age 18 (see Note);

- Witnesses (see Note); and

- Attorneys or representatives for the interviewee.

**Note:** An exception for good cause may be granted at the discretion of the interviewing officer if the proposed interpreter is aged 14–17 or is a witness (see Examples of Good Cause Exceptions). In making an exception, the officer should consider whether the reasons for permitting the use of a restricted interpreter outweigh the reasons why the individual is restricted. The interviewing officer must note on Form G-1256 that he or she is granting an exception for good cause and reference any documents in the record or offered by the interviewee that may support the exception.

a. <u>Fluency</u>

The interpreter must demonstrate proficiency in both English and in the interviewee's language to the satisfaction of the officer, meaning that the interpreter must be sufficiently fluent in both languages.  An indicator that an interpreter is fluent is the interpreter's ability to speak smoothly, easily, or readily, without difficulty or great effort.

b. <u>Competency</u>

The interpreter must communicate information accurately in both English and in the interviewee's language.  The interpreter must give a full and accurate interpretation of the entire interview.

There are a number of signs that indicate that an individual is not competent to interpret. For example:

- The response to a question you ask does not answer the question, or the response only partially answers the question.

- Words you recognize without interpretation (e.g., proper names, English words) are not interpreted.

- The interpreter uses more words to interpret a question or response than appears to have been required.

- The interpreter uses very few words to interpret a lengthy question or response by either the interviewee or officer.

- There is back and forth dialogue between the interpreter and interviewee, without explanation from the interpreter.

- The interviewee indicates non-verbally that he or she is confused or doesn't understand, such as not responding or looking surprised or confused. Keep in mind, however, that non-verbal expressions can be culturally bound, so what may indicate confusion in one culture may indicate something different in another culture.

[Source: RAIO Directorate Officer Training: Interviewing – Working with an Interpreter].

*Interpreter Certifications*

Some organizations certify interpreters as competent to interpret in a designated language. Officers should be aware that an interpreter may be competent even without such certification, and be aware that certification does not always guarantee competency.  A non-certified individual may serve as an interpreter as long as he or she is fluent, competent, and impartial.

*Legal Status of Interpreters*

The citizenship or immigration status of the interpreter does not have a bearing on the interview. Officers should request identification only as a routine procedural step for determining who is participating in the interview.

*Minors*

Individuals less than 18 years of age are restricted from serving as interpreters unless the minor qualifies for a Good Cause Exception.  See Table 1.

| Table 1 | | |
| --- | --- | --- |
| **Guidelines for Minors Serving as Interpreters** | | |
| **Age of Minor** | **Guideline** | **Good Cause Exception*** |
| 14-17<br><br>(has not yet reached 18th birthday) | Restricted | Yes, if:<br><br>• Minor demonstrates fluency, competency, and impartiality; and<br><br>• Officer obtains supervisory approval.  Supervisory approval should be documented in the "Field Office Location" box on Form G-1256 |
| Younger than age 14<br><br>(has not yet reached 14th birthday) | Disqualified | Not eligible |
| *See Examples of Good Cause Exceptions for more information. | | |

c. Impartial and Unbiased

The interpreter must be impartial and able to interpret without bias.

Officers must consider potential conflicts of interest between an interviewee and his or her selected interpreter, as well as any other circumstances that might interfere with the interpreter's ability to provide an accurate, literal, and full interpretation.

*Family Members and Other Individuals with Close Ties*

Family members or persons with financial connections to the interviewee (for example, business partners) could have either actual conflicts of interest with the interviewee or have a strong personal interest in the interviewee obtaining the immigration benefit. Family members will generally be disfavored as interpreters if there are other options available. The officer must use his or her discretion in making a determination as to whether the circumstances will interfere with the interpreter's ability to interpret objectively and provide an accurate and truthful interpretation of the information conveyed during the interview.

Although an officer may be justified in paying close attention to the interaction between the interviewee and an individual who is a family member, the disqualification of such individuals should be based on the totality of the circumstances and not merely the relationship to the interviewee. The officer should be able to articulate a reason for concluding that there is bias or impartiality impacting the interview.

*Derivatives*

A derivative beneficiary, such as the spouse or child of the interviewee, may obtain an immigration benefit if the interviewee's application is granted. If the proposed interpreter is a derivative, the officer should be particularly vigilant in deciding whether the derivative can be impartial and unbiased. However, the officer should make the determination on a case-by-case basis and must not immediately disqualify a derivative beneficiary from serving as an interpreter solely because he or she is a derivative beneficiary.

*Witnesses*

For purposes of an immigration interview, a witness is anyone who, during the interview, gives a firsthand account of something seen, heard, or experienced. A witness may also provide written testimony in the relevant case. Witnesses may include (but are not limited to) persons who:

- Are the petitioners in the case;

- Provide affidavits in connection with the case;

- Provide oral testimony at an interview or other immigration proceeding; and

- Provide letters of support for the case.

Interpreters who are witnesses are likely to be partial and biased, and therefore may be less likely to provide accurate, literal, and full interpretation. For this reason, witnesses are restricted from serving as interpreters unless the officer, in his or her discretion, grants an

exception for good cause. Officers must obtain supervisory approval and document the approval in the "Field Office Location" box on Form G-1256 prior to granting an exception for good cause involving the use of an interpreter who is also a witness.

*Attorneys and Representatives*

Attorneys and representatives who have filed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative to represent the applicant, petitioner, or beneficiary in connection with the benefit request are inherently partial and biased toward their clients' interests and consequently disqualified from serving as an interpreter at the interview.  The officer cannot make exceptions for good cause for attorneys or representatives. The restriction for attorneys and representatives applies only to the individual(s) who are listed on Form G-28 and to those who may be serving as the representative on their behalf. The restriction does not extend to all employees of the firm or company listed on Form G-28.

If the attorney or representative wishes to serve as an interpreter, he or she must withdraw Form G-28 and may not provide advice or counsel during the interview.  An officer is not required to permit an attorney or representative to serve as an interpreter after Form G-28 is withdrawn. The officer retains the discretion to determine whether the attorney or representative can competently serve as an interpreter and, during the interview, is serving in this capacity without bias or partiality.  The decision to allow the attorney or representative to serve as an interpreter after withdrawing Form G-28 must be supported by supervisory approval and noted in the interpreter contact information section on Form G-1256.

4. Conducting the Interview

USCIS requires that the interpreter provide Consecutive Interpretation to ensure that the interpretation is as close to verbatim as possible.  Consecutive Interpretation occurs when the speaker asks a question or makes a statement and immediately after (or with the occurrence of a pause) the interpreter interprets what was said for the other language speaker.  If the interpreter is speaking at the same time as the interviewee or interviewing officer or the interpreter is summarizing the statements of either party, the officer should instruct the interpreter to interpret each phrase as it is stated.

a. Explaining the Role of the Interpreter

The interviewing officer must explain the roles of all parties present at the interview.  As the officer explains to the interpreter his or her role, the officer will require that the interpreter explain this role in the interviewee's language to ensure that the interviewee also understands the role of the interpreter.

The officer will:

- Obtain government issued identification from the interpreter. The identification requirement for the interpreter is the same as it would be for anyone who is party to the interview. If an interpreter is participating telephonically, visual confirmation of identity is not required unless the interviewing officer has reason to believe there is a question about the interpreter's identity.

- Remind the interpreter that he or she is not to impose his or her own thoughts or interpretation of what is being said to either party.

- Instruct the interpreter not to assist or "coach" the interviewee in giving his or her answers to the officer.

- Instruct the interpreter to interpret consecutively, verbatim, and without adding or omitting any information.

- Instruct the interpreter to let the officer know if questions are getting too long, compound, or otherwise difficult for the interpreter to interpret effectively, so the officer can determine whether to rephrase, repeat, or take other steps to modify the questions.

- Advise the interviewee to speak slowly, clearly, and in short sentences.

- Emphasize that the interviewee should let the officer know, *at any time*, if the officer's questions are not clear, getting too long or otherwise cannot be understood by the interviewee.

- Tell the interviewee to let the officer know if there is any point in the interview when the interviewee cannot understand the interpreter.

b. Instructions for Form G-1256

*When the Interpreter is Physically Present at the Interview*

Before the interview begins the interpreter must read and translate Form G-1256 to the interviewee, or the interpreter must attest, under oath, that he has already read and translated the form to the interviewee. The officer may choose to review the statements in Form G-1256 to confirm the parties' understanding of the content.

After placing the interviewee and interpreter under oath, the officer will have the interpreter and interviewee sign the Declaration sections of Form G-1256 in the officer's presence. Although the interpreter and interviewee may review Form G-1256 in the waiting area, the interviewee and interpreter may not sign the form outside of the presence of the interviewing officer.  If the interpreter or the interviewee signed the form prior to being placed under oath,

the officer should require that both parties sign the form again while in his or her presence. It is sufficient to use the same form for this purpose.

The officer will place the signed Form G-1256 on top of the benefit application or petition.

*When the Interpreter is Participating Telephonically*

After placing the interviewee and interpreter under oath, the interviewing officer will have the interviewee sign the declaration sections of Form G-1256 in the officer's presence. The officer will acknowledge that the interpreter is unable to sign Form G-1256 due to the interpreter participating telephonically. The officer will annotate the form on the signature line indicating "Completed Telephonically" and place their initials next to the annotation.

c. <u>The Interpreter's Role and Conduct during the Interview</u>

These are general guidelines addressing the interpreter's role and conduct during the interview. During the course of the interview, the interpreter:

- Must interpret verbatim, using the officer's and the interviewee's choice of words, rather than the interpreter's choice of words.

- Must not adopt the role of interviewer or take on the primary questioning role.

- Must not provide his or her opinion, commentary, or own answers.

- Must not rephrase the officer's or interviewee's sentences with his or her own choice of words.

- Must not engage in conversation with the interviewee during the interview. The interpreter should advise the officer if a follow up question or explanation is needed to clarify the officer's original question so the officer can determine how to proceed.

- Must not try to resolve ambiguities or to paraphrase or summarize an exchange with the interviewee.

- Must advise the officer if certain terminology cannot be interpreted verbatim and if an alternative phrase that will accurately convey the meaning will be used instead.

- Must use the same grammatical tense as the speaker. For example, if the interviewer asks a question in the past tense, the interpreter should also ask the question using the past tense.

- Must maintain a neutral reaction, both verbally and non-verbally, to what the interviewee says during the interview.

- May provide an oral translation of a form(s) or document(s)

d. The Officer's Role and Conduct during the Interview

These are general guidelines for the officer's role and conduct when conducting an interview with an interpreter.  The officer should:

- Address the interviewee directly, not the interpreter, during the interview.

- Avoid conversations with the interpreter.

- Speak slowly, clearly, and in short sentences.

- Pause to give the interpreter time to communicate with the interviewee.

- Ask one specific question at a time.

- Avoid compound or long questions.

- Ask the interviewee to speak slowly and to break up his or her statements.

- Use common, uncomplicated words as much as possible, unless the meaning would be distorted by rephrasing.  If use of an uncommon, technical, or legal term is necessary, ensure that the interpreter is able to translate the term properly.

- Be conscious of speech patterns and geographical dialects that may be unfamiliar or confusing to the interviewee or the interpreter.  Be prepared to offer an alternative word for interpretation.

- Repeat questions slowly or rephrase if the interpreter seems to not understand the question or requests repetition or rephrasing.

- Rephrase or repeat a question if it appears that the interviewee did not understand the question as it was interpreted or the interviewee requests that it be repeated or rephrased.

- When necessary, remind the interviewee and the interpreter of the interpreter's role and expected conduct.

e. USCIS Officer or Other Employee as the Interpreter

An officer who is fluent in the same language and dialect as the interviewee may be qualified to conduct the interview in the interviewee's language.  However, if the interviewee brings an interpreter to the interview and indicates that he or she prefers to use the interpreter, the

officer should not substitute himself or herself in place of the interviewee's chosen interpreter.  If an officer finds it necessary to disqualify the interviewee's chosen interpreter and serve in this capacity, the officer must first obtain supervisory approval and complete the "Interpreter's Disqualification" section of Form G-1256.

f. Qualification for Duration of the Interview

During the interview, the officer must continue to consider whether the interpreter remains fluent, competent, and impartial in his or her capacity as an interpreter.

The officer may attempt to resolve or correct the deficiencies in interpretation by counseling the parties about their role or conduct. However, if the officer's efforts are not successful and the officer determines that the interpreter is not competent to interpret or is not maintaining impartiality, then the officer may exercise his or her discretion to disqualify the interpreter.

5. Disqualifying an Interpreter

At any time before or during the interview the officer may disqualify an interpreter because he or she lacks the qualifications to serve as an interpreter.

*Prior to the Interview*

The officer must make a preliminary determination whether an individual qualifies as an interpreter or is restricted from serving as an interpreter.

*During the Interview*

The officer may disqualify an interpreter during the interview if an officer determines that the integrity of the interview is compromised by the interpreter's participation.

If the officer determines that disqualification is necessary during the interview, the officer must stop the interview and discuss his or her concerns with his or her supervisor and recommend that the interview be rescheduled per local procedures.

*Procedures for Disqualifying an Interpreter*

When the officer determines that the interpreter must be disqualified, the officer will consult with his or her supervisor and follow the procedures for disqualification.

The officer must explain to the applicant or petitioner the general reason(s) for the interpreter disqualification, as well as provide the interviewee with the following options:

- Permit the interviewee to continue with the interview using another qualified interpreter;

- Reschedule the interview per local procedures in order to give the interviewee an opportunity to bring a qualified interpreter; or

- Continue the interview without an interpreter if the interviewee voluntarily desires to do so.

If the interviewee chooses to continue the interview without the assistance of an interpreter, the officer will complete the "Withdrawal of Interpreter" section of Form G-1256, including the interviewee's signature. As the interview proceeds, the officer should note in the record any inability of the interviewee to communicate and understand questions.

*6.* Supervisory Review

Supervisory consultation and approval are required before an officer may disqualify an interpreter or grant a restricted individual an exception for good cause.

Supervisory approval should always be documented on Form G-1256. Supervisory review regarding disqualification is annotated in the "Interpreter's Disqualification" section of Form G-1256. Any other supervisory review not related to disqualification should be documented in the "Field Office Location" box on Form G-1256.

See Supervisory Review Requirements for a summary of the scenarios requiring supervisory consultation and approval.

**G. Components of the Interview**

The interview is typically the most stressful portion of an applicant's interaction with USCIS. Having a professional setting and making the applicant feel at ease just prior to the start of the interview will help ensure information is more freely given. See the Interacting with Customers chapter in Vol 1, Part A for more information.

1. Greeting the Applicant

Officers will:

- Introduce themselves by title and last name;

- Escort the applicant to the interview room;

- Ask for a government-issued ID to ensure it is the correct applicant;

- Ensure that all mobile electronic devices are completely powered off prior to the start of the interview. Inform all parties at the interview that a violation of this policy may

result in termination of the interview and the need to reschedule. **Note**: Exceptions may be made if the mobile electronic device is necessary to accommodate a disability.

2. Ensuring a Conducive Office Atmosphere for Interviewing

- It is essential that the applicant or petitioner being interviewed appreciate the importance and seriousness of the proceedings. To ensure this, the setting in which the interview takes place must be orderly and official in appearance:

  o Desktop free of clutter

  o Do not display excessive amounts of personal items in view of applicants

  o Put away material relating to other cases and other applicants

- Reasonable accommodations must be provided for persons with disabilities or special circumstances. See the Disability Accommodation Requests chapter of Vol 1, Part A.

- The officer should be familiar with the computer, video and/or audio recording equipment, and electronic data systems, and be prepared to remedy any equipment malfunctions that may occur during the interview.

  **Note**: The appropriateness of electronically recorded interviews is contingent on local office policy. Please see the Interview Recording Using Webcams chapter of Vol 1, Part E for more information.

3. Role and Placement of All Participants

*Officers*

- Facilitator of the interview who establishes the environment and controls the interview. Officers should introduce themselves when he or she first brings the applicant into the office.  For example, "Hello, my name is Officer _____, and I will be conducting your [insert benefit type the customer is being interviewed for] interview today."

- Officers should briefly describe their role to the applicant and the purpose of the interview.

- Officers must keep interview subjects, their translators, and attorneys in their line of sight throughout the interview. Do not seat participants where they can observe the officer's computer.

  o There will be instances where the officer may separate petitioner and beneficiary in order to obtain independent testimony from each subject.

o The subject who is not being interviewed should be placed in the general waiting room or, preferably, in a designated separation interview waiting area.

*Applicant/Petitioner*

- Those individuals seeking immigration benefits have the burden of proof to establish their eligibility. There may be items to consider from within the applicant's record, such as if there is a pending application with an underlying approved petition. If an underlying approved petition is the basis of a pending application, an officer is not expected to re-adjudicate but they must be mindful of circumstances that may have resulted in a different decision.

*Attorney/Representative*

- Applicants and petitioners have the right to be represented, at no expense to the government, by an attorney or representative, as defined in 8 CFR 292.1(a).

- The role of representatives at interviews is to ensure the rights of the individuals they represent are protected.

- Attorneys or accredited representatives should be seated as close as possible to their client. Interviewing officers, not attorneys or representatives, determine seating arrangements.

- Attorneys or accredited representatives should have Form G-28, Notice of Entry of Appearance as Attorney or Representative on file. If there is no current Form G-28 on file, then one must be filled out and signed prior to the start of the interview.

- Ask the attorney or accredited representative for their government-issued photo identification and/or their bar card and make sure it is a match with the name on Form G-28. If a different representative is appearing before the officer than what is shown on a filed G-28:

  o Ask the applicant if they want to change their attorney to the person sitting with them in the interview;

  o Have both parties complete and sign a new G-28;

  o Place the new G-28 in the file to overlay the previously used G-28, and

  o Make the appropriate system update, indicate in the file who the attorney of record is going forward, the new counsel might be from the same firm; however, he or she may only be appearing for a limited purpose.

- The officer should consult with a supervisor before preventing an attorney or representative from being present in the interview. Officers should seek more information at the DHS Disciplinary Counsel website and the DOJ Legal Representation website. Officers should also review the DOJ List of Currently Disciplined Practitioners, which includes attorneys and accredited representatives who are currently disbarred or suspended from practice before DHS and the Executive Office for Immigration Review (EOIR).

- When conducting an interview of a petitioner and beneficiary simultaneously, attorneys or other representatives of both the petitioner and beneficiary will be permitted to appear.

- An attorney or representative may not respond to questions the officer directs to the applicant, petitioner or witness, except to ask the officer to clarify the question asked.

  o They may state an objection to a particular question or line of inquiry, but they cannot prevent follow-up on questions that officers reasonably believe are useful for determining eligibility.

  o An attorney or representative may ask the applicant or petitioner additional questions at the conclusion of the interview by the officer.

  o As a last resort, attorneys may request supervisory review without terminating the interview.

- Officers should not engage in personal conversations or arguments with attorneys or other representatives during the course of an interview. If a discussion becomes disruptive, abusive, or otherwise interferes with the orderly process of the interview, the officer should seek assistance from a supervisor. Where necessary, disagreements between officers and attorneys or other representatives regarding the appropriate role of the attorney or other representative in USCIS interviews should be elevated to senior leadership. USCIS employees may not file complaints directly to state bar disciplinary authorities. Complaints of unethical and unprofessional conduct by attorneys or other representatives should be reported to DHS Disciplinary Counsel through appropriate supervisory channels.

- An applicant may elect to proceed without his or her representative during their interview, but must sign and submit a Waiver of Presence of Attorney/Accredited Representative (officers may use this version or another version used by the local office).

4. <u>Setting a Professional Tone</u>

Officers should conduct all interviews in a courteous and professional manner. See the Interacting with Customers chapter of Vol 1, Part A for a more detailed description of how USCIS personnel and officers should interact with the public. In summary, the officer should exhibit the following professional attributes:

- Speak clearly

- Project a positive tone of voice

- Practice active listening

- Have patience with applicants who are limited English proficient or who have other communication challenges

- Use plain and simple language when questioning an applicant, petitioner, or witness

- Avoid complex and lengthy questions

- Avoid using USCIS or government jargon and acronyms

Applicants have the right to be treated with courtesy, respect, honesty and professionalism.

If an officer inadvertently upsets an applicant, the officer should listen and empathize. This will help the officer determine exactly what happened and will demonstrate to the applicant that the officer wants to understand the applicant's position. See the section on Interacting with Upset Customers in Vol 1, Part A for more information.

Officers must understand that an interview before a government official may be intimidating for various reasons, including:

- Prior negative experiences with authority figures;

- The differences between the applicant's culture and the culture of the officer; and

- Fear of exposing information of a highly personal or sensitive nature.

Officers must develop the material facts, whether they are favorable or adverse to the person being interviewed or any other person.

Officers should confront applicants with inconsistencies in the record (oral testimony or otherwise), but officers must *not* make remarks of a personal and disparaging nature.  Officers should avoid statements that may be viewed as a judgment of a personal lifestyle or a negative comment upon a particular person, race, ethnicity, religion, or country.

Officers must maintain a neutral tone throughout the interview. The officer must not:

- Argue in opposition to the applicant's claim;

- Question the applicant in a hostile or abusive manner;

- Take sides in the applicant's claim; or

- Attempt to be overly friendly with the applicant.

**H. General Interview Procedures**

Conducting successful interviews is a skill that requires knowledge and experience. Successful approaches will vary depending on the officer, the applicant, subject, and purpose of the interview.

Interview proceedings must not be adversarial in nature. A non-adversarial proceeding is one in which the parties are not in opposition to each other. The purpose of the interview is to obtain the relevant information in order to make the correct decision on a case.

1. <u>At the beginning of the interview</u>

- Begin the interview with an explanation (in plain language) of the purpose of the interview. Advise all participants of the interview format and clearly direct your questions to the individual whom you want to answer the question.

- Obtain identification from all parties to establish identity, if not done so already. See the <u>Customer Profile Management System–IDENTity Verification tool (CPMS-IVT) chapter</u> in <u>Vol 13, Part C</u> for more information.

- Officers must ask the applicants to raise their right hand and recite the following oath or affirmation:

  ***"Do you solemnly swear (or affirm) that the statements you are about to make will be the truth, the whole truth, and nothing but the truth?"***

- If officers take a formal written sworn statement, the exact wording of the oath or affirmation should be included in the transcript.

- Explain confidentiality. Officers should explain that the information that the applicant provides remains within the U.S. government and local and state entities and is not shared with those outside of the U.S. government or these entities.

2. <u>During the interview</u>

- Review any additional evidence submitted at time of interview. Submitted evidence should be added to the applicant's A-file.

  **Note**: Officers are to refrain from requesting applicants or petitioners to produce evidence from smart phones or other such digital devices.  If an applicant or petitioner voluntarily shows an officer an image on his or her phone to supplement oral testimony, then the officer may consider it and document its significance as appropriate in his or her notes.  An officer should not request applicants or petitioners to produce evidence from their phones, take possession of, or navigate through the device. Applicants and petitioners who wish to supplement the record with images or other such information from their digital devices should be issued a request for evidence (RFE) as appropriate, and be requested to submit the evidence through traditional means, e.g. screen prints submitted in paper format or evidence uploaded by the applicant or petitioner into ELIS in response to the RFE.

- Review application/petition with the applicant or petitioner and review biographic information. Make a check mark next to each question asked. Make corrections and updates as needed.  For form specific corrections (e.g. N-400, I-485) please refer to the procedures for those form types in the applicable CHAP sections.

  **Note**: All checkmarks, cross outs, annotations, corrections, and updates officers make on a form ***must*** be in <span style="color:red">red</span> ink.

- Have the applicant (where appropriate) sign the form.

- Remain in control despite adverse circumstances.

- The officer should notify his or her supervisor if extenuating circumstances necessitate additional interview time than what was initially allotted.

- Should the officer be required to leave the office for any reason during the interview, the relating A-file(s) should be removed from sight to avoid unauthorized access during the officer's absence.

- Be attentive to each person who is providing testimony. In certain types of cases where more than one individual is to be questioned, the officer may choose to question the individuals separately.

- Do not make assumptions; clarify testimony if needed.

- Treat each applicant as an individual. Although many claims may be similar, each claim must be treated on a case-by-case basis and each applicant must be treated as an individual.

- Ask questions in non-technical terms.

- Address all material elements of the applicant's claim. The officer must elicit all relevant and useful information bearing on the applicant's eligibility. The officer must ask questions to expand upon and clarify the applicant's statements and information contained on the form. The response to one question may lead to additional questions about a particular topic or event that is material to the claim.

- Provide the applicant an opportunity to clarify inconsistencies. The officer must provide the applicant with an opportunity during the interview to explain any discrepancy or inconsistency that is material to the determination of eligibility.

- Take notes.  Make a record of the testimony obtained during the interview.

  o Develop a standard note-taking style and format, taking notes is a must during all interviews.

  o Indicate who is speaking.

  o Officers should not get so caught up in note-taking that they forget to look at the applicant.  Good record-keeping is important, but so is eye contact and body language.

  o If the interview is electronically recorded, periodically annotate the time in the interview notes.  These time marks will assist in matching the written and audio-visual records.

  o Each individual's handwriting is different.  However, officers should strive to develop and maintain a clear handwriting style for interview notes. Legible notes will be invaluable for understanding the status of the case.

  o After the interview, if a denial is a possibility or the basis for approval is not plainly evident from the record; officers should place any significant information from interview notes and file review in a Memo to the File or on a Referral Sheet that will be maintained as part of the A-file.

- Provide the applicant the opportunity to explain derogatory, conflicting or inconsistent information and note that opportunity in the interview notes.

3. <u>At the conclusion of the interview</u>

- Inform the applicant and his or her representative of any next steps and give them the opportunity to ask any questions.

- Make a copy of all identification documents and original materials when practicable (if not done at the beginning of the interview); place the copies in the A-file and hand the originals back to the applicant or petitioner.

- Thank them for their time and then escort them out of the officer's office.

**I. Closing Out or Terminating the Interview**

1. <u>Closing out</u>

Officers should not unnecessarily prolong an interview, but should conclude it when they have elicited all necessary information. They should thank individuals interviewed for their time and cooperation.

If the case can be approved, then do so.  Inform the applicant or petitioner of the next steps, such as their legal permanent resident card or naturalization ceremony notice will arrive in the mail, we may schedule them for a new interview, they must wait for their visa number to become current, or there is a need for additional information.

The officer should issue any notices that are available at the time, such as RFE, a reschedule notice, or other notices deemed appropriate.

An applicant, petitioner, or his or her attorney or accredited representative of record (on Form G-28 in the A-file), may request a copy of the record of proceedings, including any written record of a USCIS interview.  To make this request, officers should direct them to www.uscis.gov/foia for instructions on filing a Freedom of Information/Privacy Act Request.

If a sworn statement was taken, a copy of the sworn statement shall be provided upon request pursuant to 8 CFR 103.2(b)(7).  See CHAP Part E, Chapter 6.C.1  (However, except in N13, if the case is dependent on Yemeni civil documents and the sworn statement has only been taken from the petitioner, then do <u>not</u> provide a copy of the petitioner's sworn statement until after the beneficiary's interview. See PM Vol 1 Part E Chapter 6).

2. <u>Terminating the interview and rescheduling</u>

Officers should avoid terminating an interview whenever possible.  However, on rare occasions an officer may need to terminate an interview even though he or she may not have obtained all essential information.

An interview may be terminated for reasons including, but not limited to, the following:

- The person being interviewed is unable to communicate without an interpreter, and one is not available.

- An interpreter clearly has difficulty translating effectively. See the "Use of Interpreters at Field Office Interviews" section of this chapter for more information.

- The officer has reasonable doubts about either the ability or impartiality of an interpreter supplied by the applicant, and a USCIS or DHS interpreter is not immediately available.

- An attorney or other representative of an applicant insists on responding to questions or coaching the person being interviewed.

- An attorney or other representative of an applicant insists on interpreting for his or her client during an interview. Note, the attorney may act as the interpreter, but may not simultaneously be counsel.

- The person being interviewed refuses to respond to questions essential to the successful completion of the interview.

- The conduct of the applicant, petitioner, attorney, or other representative becomes threatening or abusive.

- The applicant or petitioner is visibly incapable of properly responding to questions due to a possible health impairment or intoxicated condition.

- Attorney abruptly leaves during the interview and the applicant does not want to proceed in their absence. (Note: If the applicant wishes to proceed with the interview, have the applicant sign a Waiver of Presence of Attorney/Accredited Representative.)

- The applicant, petitioner, attorney, or any other party present during the interview does not comply with the requirement to power off a mobile electronic device.

Officers should inform a supervisor of the reason for the termination prior to terminating the interview. It is the responsibility of the supervisor to determine if termination is warranted. The officer should explain the reason(s) for the termination. When appropriate, the interview should be rescheduled.  If the officer must terminate the interview due to an issue with the interpreter, arrangements should be made for a competent interpreter. Notify the supervisor if the applicant and/or attorney/representative refuses to leave the officer's office.

3. Rescheduling applicants showing signs of illness

The public-facing USCIS website advises applicants to consider rescheduling their appointments if they feel sick. If an applicant has not rescheduled their appointment and arrives at a USCIS field office showing signs of an influenza-like Illness (coughing, sneezing, fever appearing ill, etc.), employees should coordinate with their supervisor and reschedule the applicant at least two weeks into the future, without penalty.

When rescheduling applicants showing signs of an influenza-like Illness (coughing, sneezing, fever appearing ill, etc.), employees may offer a dust mask to help prevent the spread of illness, but may not require the applicant to wear the mask before providing services.

**J. Post-Interview**

Officers should complete all post-interview actions immediately following the interview. Please refer to your local office policy for this process. Some of these actions include the following:

- Complete required worksheets, including adding any interview notes that will be helpful to other officers who are reviewing and/or adjudicating the current or future applications.

- Obtain required supervisory concurrence.

- If needed, issue a Request for Evidence.

- Update required systems. This includes checking for any open applications/petitions that should be administratively closed in CLAIMS/ICMS. Some cases contain a Perfect sheet noting opened applications from the NBC.

- Ensure the file remains in ROP order. See I-485 ROP or the NQP ROP.

- Perform any other steps required for the application or petition. Refer to the applicable sections of the CHAP for application-specific information, including Vol 7, Part A, Adjustment of Status Policies, Goals, and Procedures, Vol 12, Citizenship and Naturalization, and New York District Office "Stokes" Interviews.

- Route file according to office policy, including updating RAILS.

**K. Interview Techniques**

Interview techniques are tools officers use to develop and verify information.  Some interview techniques work better in some circumstances than in others.  Sometimes experience and

training will guide the officer, but sometimes an officer will have to employ a variety of techniques before finding the most effective one.

During the interview, the officer should:

- Ask for biographical data at the beginning of the interview to establish a baseline for behavior. If officers ask petitioners or applicant's questions about basic biographical information that does not impact eligibility for a benefit, that behavior can be contrasted with the behavior exhibited when the questions move to more critical issues.

- Keep track of critical issues.  Before beginning the interview, note the critical issues particular to the case in front of the officer, and add issues that arise during the course of the interview.

- Understand the different types of questions and when to use (and not to use) them.

  o Open-ended questions - Officers should frame almost all of their questions as open-ended.  Open-ended questions solicit views, opinions, thoughts and feelings and generally call for longer, narrative-type responses. Open-ended questions are normally very useful in assessing an individual's credibility and for eliciting statements which may later be supported or contradicted. Examples:

    ▪ Tell me about any arrest you had. (Instead of: Have you ever been arrested?)

    ▪ How do you get to work? (Instead of: Do you drive to work?)

    ▪ Tell me about each place you have lived in the United States, beginning with where you live now. (Instead of: You lived in Newark, San Diego, Miami, and Des Moines, right?)

  o Closed-ended questions - Officers should generally avoid closed-ended questions. Officers typically use closed-ended questions only in review of petitions and applications, to resolve ambiguous answers, or to confirm apparent discrepancies or suspected false statements.  Closed-ended questions call for specific, factual and usually yes/no or very brief responses. Closed-ended questions make it easy to conceal information, even if not intentionally.  Examples:

    ▪ Have you ever been arrested?

    ▪ Does anyone other than your spouse live with you?

- o Follow-up questions – Officers should make use of follow-up questions.  Follow-up questions may be asked later in the interview in order for the applicant to support or expand upon answers provided earlier in the interview.  Examples:

  - You said that you had been arrested once, but the charges were dropped.  How did you come to be arrested in the first place?

  - You said Joe Smith lives with you and your husband.  Tell me about Joe Smith.

- o Leading questions – Officers should avoid leading questions. Leading questions are a type of closed-ended question that assume a controversial fact or suggest the answer.  The only exceptions are the same for other closed-ended questions. Examples:

  - Did you move out of East Pawtucket because you got married? (Suggests the answer.)

  - You didn't plan to live in the United States when you applied for your immigrant visa, right? (Suggests the answer.)

- o Compound questions – Officers should never ask compound questions.  A compound question is multiple questions within one question.  Compound questions require applicants and petitioners to keep several questions in mind at the same time. Compound questions also allow applicants and petitioners to selectively answer only the questions they want to.

- o Multiple-choice questions – Officers should avoid asking multiple-choice questions. **Allow applicants and petitioners to fully explain themselves**.

- Officers must give applicants the opportunity to fully explain all inconsistencies and unresolved issues.  Officers are neutral fact finders, and due process requires consideration of all relevant evidence.  Officers must remember that the purpose of the interview is to develop the facts, favorable as well as unfavorable, with equal fairness to the applicant and to the interests of the Government.

Officers should:

- Elicit as many details as possible.

- Narrow the focus of the line of questioning.

- Ask mostly open-ended questions.

- Pose an alternate line of questioning when appropriate for examining credibility and eligibility.

- Revisit topics of interest for clarification.

- Be prepared to pursue new lines of questioning suggested by testimony.

*Verbal Behaviors*

- Truthful patterns may include:

  o Responses are direct and timely.

  o Responses are detailed rather than as brief as possible.

  o Cooperative with the line of questioning.

  o Answers promptly without continuous interruptions.

- Deceptive patterns may include:

  o Vague responses.

  o Very brief and limited responses.

  o Long pauses while providing testimony.

  o Speaking in a soft tone.

  o Repeats the question and complains throughout line of questioning (as a stalling tactic).

  o  Hesitates or asks for the question to be repeated or rephrased only at time of important questioning.

  o New speech patterns emerge, such as a switch from "Yes" or "No" to "as far as I know" or "not that I am aware of."

*Non-Verbal Behaviors*

Non-verbal behaviors are largely indicators of being stressed or being relaxed.  Stress may be an indication of untruthfulness, as lying is considered more difficult than telling the truth.  Non-verbal behavior is <u>not</u> proof and it needs to be evaluated in the context of each particular interview and personality.  The purpose of biographical questions early in the interview is to help establish that context.

*Additional Factors*

Officers should keep in mind that not all applicants will behave the same.  Applicants come from varied backgrounds with different normative behaviors and cultural habits. Officers should refer to the section on Intercultural Communication in Vol 1, Part A, Chapter 3 for more information and also keep in mind:

- Personal Bias

- Intercultural misunderstandings

- English language ability

- Time constraints

- Stress and environmental factors

**L. Interviewing Minors**

When interviewing minors (individuals under the age of 18), officers should keep the following considerations and best practices in mind:

1. Considerations for Interviewing Minors

- Trusted Adult: Minors may request that a "trusted adult" be present during the interview. This is generally a person that helps the minor feel at ease. Officers should permit the minor to have a trusted adult at the interview in addition to a legal guardian, accredited representative, or attorney. The trusted adult should be advised he or she is there for support only and may not speak for the minor or act as his or her representative. If at any time the officer observes that the child is uncomfortable speaking freely or is afraid of the adult, the officer should ask the adult to leave. There is no requirement that a trusted adult be present. Additionally, suspected trafficking must be reported if trafficking indicators are present. See Guidance for Reporting Victims of Suspected Trafficking in the Division 1 Resource Library.

- Developmental Factors: The officer's questions during the interview should be tailored to the minor's age, stage of language development, and level of education. Questions should be posed with the minor's mental development, maturity, and trauma history in mind.

- Cultural Considerations: Cultural factors can influence how a minor may respond to an adult with authority.  Certain cultural aspects can have an impact on the interview, such as:

- How minors in that culture interact with adults.

- Whether eye contact is considered rude or permitted.

- When asked questions by adults, whether minors are expected to respond briefly or with details.

- How minors in that culture perceive authority figures, such as law enforcement, government officials, or a USCIS immigration officer.

- Whether the minor is from a cultural background where there is mistrust, lack of confidence in, or fear of law enforcement.

2. <u>Suggested Techniques for Interviewing Minors</u>

Foremost, the officer should ensure that all interviews are conducted in a non-adversarial manner and with sensitivity.

In order to create an appropriate atmosphere, the officer should attempt to build rapport with the minor, "read" the minor for any signs of misunderstanding or confusion, and guide the minor through the interview process.

- Building Rapport: The officer should begin with easy topics to establish rapport and give the minor time to become accustomed to the interview. The officer may be able to overcome much of a minor's timidity or apprehension with a brief rapport-building session during which neutral topics are discussed, such as general interests, family, hobbies, and sports.

- "Reading" the Minor: During the interview, the officer should take the initiative to determine whether the minor understands the process and the interview questions. The officer should watch for non-verbal cues, such as puzzled looks, knitted eyebrows, downcast eyes, long pauses, and irrelevant responses. While these behaviors may signal something other than a lack of comprehension, they may also signal that the minor is confused. In such circumstances, the officer should pause, and if no appropriate response is forthcoming, rephrase or simplify the question.

- Body Language: The officer should expect the minor to be attuned to the officer's body language. Minors rely on non-verbal cues much more than adults to determine whether they can trust a person. The officer should strive not to appear to be talking down to the minor.

- General Interviewing Pointers:

o Introduce yourself and let the minor know the purpose of the interview and why you are asking questions.

o Use simple words and ask clear, concise, direct questions in a non-adversarial manner. Also, avoid compound questions and make eye contact, if appropriate.

o Pause and allow the minor time to process before responding.

o When ending the interview, be sure to ask the minor if he or she has anything else to add or any questions. Review the next steps in simple terms, such as going over how long it will take for a decision to be made, how he or she will be notified of the decision, and how to check the status of his or her case.

o Other things to keep in mind during the interview:

  ▪ Minors may be reluctant to ask for clarification of questions.

  ▪ Minors may provide unusually short answers and fail to elaborate. Be ready to ask concise and direct follow-up questions so as to obtain sufficient elaboration. Be ready to rephrase or simplify a question if the answer was not satisfactory. Be ready to provide an example to show what level of detail you would like the minor to provide.

  ▪ Minors may avoid eye contact and may be more forthcoming and comfortable when eye contact is not always expected.

  ▪ Minors may not want to acknowledge that they do not understand something. Asking "Do you understand?" may not be useful, whereas simply rephrasing the substantive question directly may be more productive.

  ▪ Officer should avoid adult nuance, sarcasm, and irony.

  ▪ Adults sometimes misjudge the comprehension level of a minor because the minor may come across as mature or even look like an adult.

**M. Interview Recording Using Webcams**

These procedures provide guidance and instructions for the proper recording of interviews conducted for immigration purposes.

1. <u>Scope</u>

These procedures apply to all USCIS officers who record interviews during the immigration process. For the purposes of these procedures, offices that audio-visually record immigration

interviews will record, at a minimum, interviews conducted for all cases that they deem to be of concern, plus a certain small percentage of other interviews.  There is not a nationwide policy for recording interviews; however, field offices should follow these guidelines in establishing their own local policies.

2. <u>Instructions for Windows 10</u>

Please refer to the <u>Interview Recording Using Webcams instructions for Windows 2010</u> for more information.

3. <u>Data Clean-Up</u>

The original video file should still be in the original saved location after the recording and testing process is completed.  You must **delete** this file**.**

These files are typically very large; **do not copy them to your Work Folders or other network Share drives, and do not email them.**

- Right-click on the video file, then select "Delete."  This will send the file to the Recycle Bin.



- To empty the Recycle Bin, Right-click on it and select "Empty Recycle Bin"



4. <u>Eject and Save</u>

Once the testing process is complete, eject the DVD.  Clearly and neatly print the name of the file on the DVD and place it in a two-hole punched DVD sleeve; place it in the A-file on the left-hand side per the ROP.

5. <u>Help and Support</u>

If you have any issues with the installation and setup of the hardware or software, please contact the Help Desk.

For other issues involving the interview recording process or related policies, please contact your supervisor.

**N. Interview Recording Using ELIS**

The officer will also be able to audio record interviews for certain benefit requests in ELIS including Forms I-130, I-485, and N-400. If the recording capability is available, the applicant will need to be verbally informed that the interview is going to be recorded and then the officer will need to press the radio button in ELIS to reflect that the interview was recorded. ELIS will capture the applicant's permission to record via the iPad.

Recording an interview is based on the discretion of the officer and not all interviews need to be recorded. Recordings are securely stored within ELIS and are available for future reference.

If the applicant declines the interview from being recorded, the notes in the ELIS record should be updated to reflect that the applicant declined a recorded interview. The interview will proceed and may require the applicant to be given a "Question and Answer" testimony that will be made part of the record based on the interview and be uploaded into the evidence section of ELIS.

*Current as of: November May 10, 2023*