**GREEN EVANS-SCHROEDER, PLLC**
Matthew H. Green (Bar No. 020827)
Peter Hormel (Bar No. 015808)
130 West Cushing Street
Tel.: (520) 882-8852
Fax: (520) 882-8843
Email: matt@arizonaimmigration.net
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>vs.<br><br>Hernan Rafael Castro,<br><br>   Defendant. | CR25-02525-RCC-MSA-1<br><br>**SUPPLEMENTAL PRE-HEARING MEMORANDUM RE: ADMISSION OF DOCUMENTS**<br><br>EH: 01/20/2026, 09:30 a.m.<br><br>(Honorable Maria S. Aguilera) |

Defendant, through counsel undersigned, hereby submits the following memorandum regarding the admissibility of documents, to wit: the file maintained by Margo Cowan and her law firm, Keep Tucson Together (KTT) during their representation of Mr. Castro in his application for naturalization. This file has been offered for admission into evidence at the continued evidentiary hearing as Exhibit 38.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Introduction**

1

Mr. Castro has been charged with making a false certification on an application for naturalization, and he has filed a Motion to Dismiss (Document 35) based on the government's destruction of evidence. The evidentiary hearing ("EH") on this motion was begun (but not completed) on November 18, 2025. The continued hearing is scheduled to take place on January 20, 2026. In the meantime, the parties took the deposition of Mr. Castro's former lawyer, Margo Cowan, on December 9, 2025.

During the hearing on November 18, 2025, Mr. Castro sought to admit a copy of the file Ms. Cowan and her organization, Keep Tucson Together (KTT), had maintained during their representation of him into evidence. This exhibit was offered because it contains a string of relevant text messages[1] between Mr. Castro and Xochitl Mercado, a staff member at KTT who worked with Mr. Castro on Ms. Cowan's behalf, for the purpose of preparing the naturalization application at issue in this case.

During the hearing, there was discussion regarding the admissibility of this exhibit. *See* EH Exhibit 55, Official Transcript of Proceedings Evidentiary Hearing ("EH Transcript"), pp. 15-22. Ultimately, the Court held its ruling on the admissibility of the exhibit in abeyance, concluding: "Okay. Well, I'm going to hold off on admitting them until you lay more foundation for their admission." EH Transcript, p. 22, ll. 7-9.

---

[1] These messages were written in the Spanish language. English translations have been provided to the government and will be offered as a supplemental exhibit by the defense at the Jan. 20th hearing. They demonstrate that, prior to signing his naturalization application, Mr. Castro asked his attorney and her legal assistant whether his criminal history would cause him problems with his naturalization application, and that they assured him that it would not. *See* EH Exhibits 38, 58.

2

## II. Law

### A. Relevance: Why Mr. Castro's Client File Kept by Ms. Cowan (Exhibit 38) Is Exculpatory in Itself, and Why It Demonstrates the Exculpatory Value of the Destroyed Video Recording

To prevail at trial, the government must prove that Mr. Castro knowingly made a false certification on his naturalization application. In challenging the element of mens rea, Mr. Castro will allege and argue that he reasonably believed the application was correct at the time it was submitted. This belief was based on assurances from Ms. Cowan and KTT, which included the assurances provided to him by Xochitl Mercado on May 4, 2022. *See* EH Exhibit 38, 0370-0371. As the English translations of this content will establish, the exact exchange between Mr. Castro and Ms. Mercado on May 4, 2022, consisted of the following:

Q: Oh ok and what did Margo say about my case?

A: She told me you should apply for citizenship.

Q: And I won't have any problems with the thing in my past?

A: She told me you could apply. When she tells me to do this, it is because she thinks you won't have any problems.

*Id.*; *see also* EH Exhibit 58. As explained more thoroughly below, this evidence is being offered during the ongoing evidentiary hearing to show the statements' "effect on the listener." The relevancy (and admissibility) of out-of-court statements for this purpose is, of course, firmly established. *See, e.g., U.S. v. Payne*, 944 F.2d 1458, 1472-1473 (9th Cir.

1991)[2]; *see also U.S. v. Ryan*, 2023 WL 7284157 at 4 (N.D. Cal. 2023) (admission of relevant out-of-court statements appropriate because they were relevant to explain why a witness called the police "and to contextualize the government's theory of the case").

In this case, it is easily understandable why Mr. Castro would have asked Ms. Mercado if Ms. Cowan had any concerns about his past. The evidence establishes that Ms. Cowan had represented Mr. Castro in his prior deportation case with the Eloy Immigration Court in 2015. *See* EH Exhibit 22 (admitted 11/18/2025). Mr. Castro spent five months locked up in immigration detention during the pendency of that case, and his incarceration was the proximate result of the denial of his 2014 naturalization application. *Id.*; *see also* EH Exhibit 17 (admitted 11/18/2025). The jury will receive this evidence at trial, and, against this backdrop, they may easily infer that Mr. Castro was worried about being re-arrested, re-incarcerated, and subjected to potential deportation again. The evidence, of course, also establishes the fact that Ms. Cowan had been representing Mr. Castro for seven years as his immigration attorney in 2022. Therefore, the jury can easily conclude that it was reasonable for Mr. Castro to believe that Ms. Cowan was aware of his criminal and immigration history such that she could provide him with accurate legal

---

[2] In *Payne*, the Ninth Circuit upheld the trial court's decision overruling an objection to certain statements, explaining that they were being admitted "so that the witness can explain why she did what she did after that, or to give meaning to what happened after that, not necessarily that what somebody told her was the truth." *Id.*, 944 F.2d at 1472.

advice[3] (which was conveyed by her, to Mr. Castro, through Ms. Mercado via the text thread at issue).

For these reasons, the text messages in EH Exhibit 38 are relevant "to give meaning to what happened after that." *Payne*, 944 F.2d at 1472. Because, if Ms. Mercado had not provided Mr. Castro with Ms. Cowan's unequivocal assurance that "you won't have any problems," the jury may reasonably conclude that Mr. Castro would have made the decision not to apply for naturalization again. Instead, the evidence shows that, over the next few weeks, Mr. Castro cooperated by providing Ms. Mercado with some final pieces of information, and he was ultimately instructed to come to the KTT office to sign the application, which Ms. Cowan had already signed. *See* EH Exhibit 38, 0373.; *see also* EH Exhibit 19, 0026, 0028 (admitted 11/18/2025).

At trial, Mr. Castro will allege and argue that he was led to reasonably believe by Ms. Cowan that he no longer had any criminal impediments that would cause him immigration problems. Mr. Castro will also allege and argue that this was his belief at the time he signed his naturalization application on June 9, 2022, and it was likewise his continuing belief at the time he appeared for his naturalization interview on May 17, 2023.

---

[3] Recently, Ms. Cowan testified under oath at her deposition that, in her opinion, it was reasonable for Mr. Castro to believe that she was aware of his immigration history, and that it was reasonable for Mr. Castro to believe that any concerns he had voiced to Ms. Mercado had been accurately relayed to her as well. EH Exhibit 56, Transcript of Dec. 9, 2025 Deposition of Margo Cowan, 0721-0722. She also testified that she thinks it was reasonable for Mr. Castro to believe that, by signing his application as the preparer of the document, t she had reviewed the application and concluded that it was properly prepared. *Id.*, 0722.

5

Furthermore, Mr. Castro will argue that the sworn statement he signed on May 17, 2023 corroborates this fact, particularly because he provided a thorough written answer on the second page of that document which smacks of legal advice he had received from his attorney. When asked to explain in pen and ink what he believed USCIS ought to know about anything related to his past criminal conduct[4], Mr. Castro wrote:

> In March 2015 I was detained by Immigration due to some convictions allegedly occurring before 2009. These claims were proved to be in violation of my rights a non-citizen; therefore they were all voided in the interests of justice. The immigration claims were also voided and I was released by Immigration. My status was restored as a Permanent Resident.

EH Exhibit 21, 0046 (admitted 11/18/2025).

The preceding statement is significant both for what it contains, and for what it lacks. First, by answering "No" to the question, "[h]ave you ever committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested," the evidence shows that Mr. Castro did not believe that his juvenile conduct of selling "medications" when he was 16 years old qualified as having committed a "crime or offense" for which he was not arrested. His next answer, *supra*, explains more fully what he believed qualified as "crimes or offenses" that Officer Lopez asked him to explain, and

---

[4] For context, it is important to recognize that Mr. Castro was asked three, consecutive questions about his criminal history on the sworn statement document that he was handed and asked to respond to in writing. Those questions were: (1) "[h]ave you ever helped any person to enter illegal [sic] to the United States," to which he answered "no," and (2) "[h]ave you ever committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested," to which he also answered "no." The third question, to which he provided the lengthy answer, was "[i]s there something else that you want to add?" EH Exhibit 21, 0046.

they all involve arrests and prior convictions which occurred after he became an adult. Therefore, Mr. Castro's answers on his sworn statement reflect a state of mind where he genuinely did not believe that his juvenile conduct was relevant in any way to his immigration case.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence to determining the action. Rule 401, Fed.R.Evid. This case boils down to whether the Government can prove mens rea. The theory of Mr. Castro's defense is simple. Relying on legal advice he received from his attorney, he signed the application prepared by his legal team believing the information in that application was legally correct. Aside from the words written on the sworn statement, the video recording of Mr. Castro's naturalization interview would have unequivocally contained more evidence—more **exculpatory evidence** which, for the purpose of his motion to dismiss now at issue, Mr. Castro must only prove was "potentially useful" to his defense.[5]

There are ample reasons why the video recording of Mr. Castro's interview would have been either materially exculpatory or, at the very least, potentially useful as to the

---

[5] To prevail on a motion to dismiss for failure to preserve exculpatory evidence, a defendant must demonstrate that the destroyed evidence was (a) either materially exculpatory *or potentially useful*, (b) the exculpatory value was apparent before its destruction, and (c) the government acted in bad faith in failing to preserve the (materially exculpatory or potentially useful) evidence. *See U.S. v. Zaragaoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988); *U.S. v. Cooper*, 983 F.2d 928, 931 (1993); *U.S. v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013); *U.S. v. Leal-Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012).

critical element the government must prove—that he **knowingly** committed the crime.[6] Under the law of this jurisdiction, a jury "may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether" the defendant "is aware of the act and does not act through ignorance, mistake, or accident." *See* EH Exhibit 41, Ninth Circuit Pattern Criminal Jury Instruction 4.8.

A picture is worth a thousand words. And a video recording is worth much more. The video recording, had it not been destroyed, would have contained a multitude of evidence that tended to show that Mr. Castro, in fact, signed his naturalization application "through ignorance, mistake, or accident" because he received and relied on incorrect advice of counsel. For example, the video would have provided audio evidence of every word that Mr. Castro said, and every word that Officer Lopez said. It would have reflected the speakers' tone, pitch, volume, and speed, which in turn would have allowed the jury to assess whether the speakers appeared to be confident or nervous or defensive or hostile or afraid. The video recording would have also allowed the jury to evaluate Mr. Castro's nonverbal behavior. For example, it would have shown Mr. Castro's posture, eye behavior, facial expressions and color, gestures and hand movements, body movements (e.g., fidgeting and agitation or lack thereof), and overall emotional regulation.

For these reasons, the video footage was, at the very least, potentially useful evidence. *See Zaragoza-Moreira*, 780 F.3d at 978 ("Potentially useful evidence, as

---

[6] In this case, the prosecution must prove to the jury beyond a reasonable doubt that Mr. Castro knowingly committed acts or admissions, not once, but *twice*. *See* EH Exhibit 40, Pattern Jury Instruction, 18 U.S.C. § 1015(d).

defined in *Youngblood*, is 'evidentiary material of which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant.'") (citation omitted).

**B. The Statements (Text Messages) Are Not Hearsay.**

It is expected that the government will object to the admission of the above-described evidence on hearsay grounds pursuant to Rule 802 of the Federal Rules of Evidence, but for the purposes for which they are being offered, they are *not hearsay*.

Rule 801(c) states:

(c) HEARSAY. ''Hearsay'' means a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and
(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

In this case, Mr. Castro is not offering the statements in evidence to prove the truth of the matter asserted in the statement. In other words, Mr. Castro is not offering Ms. Cowan's statements and the written text messages to prove that what they said was true. As set forth *supra*, Mr. Castro is offering Exhibits 38 and 58 to show the text message statements' effect on the listener. *See*, *supra*, *U.S. v. Payne*, 944 F.2d at 1472-1473; *U.S. v. Ryan*, 2023 WL 7284157 at 4.

The statements are offered only for their actual existence and that Mr. Castro received them and acted upon them. As such, they do not meet the basic definition of hearsay and are admissible. That a statement thus offered is admissible is not controversial. *Caldrone v. Circle K Stores Inc.*, 156 F.4th 952 (9th Cir. 2025); *See also*.

9

*Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70, 82 (7th Cir. 1950), citing VI Wigmore on Evidence (3rd Ed.) §§ 1789, 1729.

### 1. Alternatively, Even if the Court Considers Them Hearsay, The Statements Are Admissible.

In the alternative, should the Court decided that the statements are indeed hearsay, they would still come in via the Hearsay Exception found in Rule 803(6), Records of Regularly Conducted Activity. The statements are part of a file maintained in the regular course of business of Margo Cowan and her immigration clinic, KTT. They are verbatim copies of the messages exchanged at the time and were made part of the file then.

For the records to be admissible, the following foundational facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) the record must have been kept in the course of a regularly conducted business activity. *Kennedy v. Los Angeles Police Dept.*, 901 F.2d 702, 717 (9th Cir. 1990). The documents in Exhibit 38 meet these requirements.

### 2. Foundation and Authentication

#### a) Deposition of Margo Cowan

Margo Cowan was deposed by the parties on December 9, 2025. During that deposition, Ms. Cowan gave sworn testimony that she recognized what was identified for purposes of the Deposition as Exhibit C as the client file maintained by KTT for Hernan Castro. She testified that she delivered it personally to the office of the undersigned. *See* EH Exhibit 56, Transcript of Deposition of Mary M. Cowan pp. 17-18, ll. 23-12.

Rule 104(a) of the Federal Rules of Evidence states as follows: "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or *evidence is admissible*. In so deciding, the court is not bound by evidence rules, except those on privilege." (Emphasis added.) Further, section (b) adds: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."

Interpreting this rule, the Supreme Court of the United States held that the standard is liberal: "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact -- here, that the televisions were stolen -- by a preponderance of the evidence." *Huddleston v. United States,* 485 U.S. 681, 690, 108 S. Ct. 1496, 99 L. Ed. 2d 771(1988). As such, the only inquiry for this Court is whether a jury could reasonably conclude that Ms. Cowan's testimony establishes adequate foundation for the admission of the documents by a preponderance of the evidence. And, of course, it does.

Coupled with the Nov. 18, 2025 testimony of defense counsel's investigator, Ray Pacheco, and his administrative assistant, Sabrina Myers, and the certified translations of the Spanish portions of the text messages, EH Exhibits 38 and 58 the foundation, authentication and reliability of the evidence is established, even under the more demanding requirements of Rule 803(6).

**C. Conclusion**

For the foregoing reasons, Mr. Castro respectfully asks this Court to find that Exhibit 38 is admissible for the purpose of the ongoing evidentiary hearing, either as non-hearsay or as a record of a regularly conducted activity.

RESPECTFULLY SUBMITTED this 16th day of January, 2026.

By: s/ *Matthew Green*
Matthew Green
Attorney for Defendant

Copy of the foregoing
via Email to:

Vincent J. Sottosanti, Esq.
Assistant United States Attorney

Jose R. Solis, Esq.
Assistant United States Attorney